UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
_____

In the Matter of:

ANTHONY J. FRISCH,                     Case No. 11-12290-swd
                                              (Chapter 7)
          Debtor.                      Case Filed: December 14, 2011
_____/

MARCIA R. MEOLI, Trustee,              Adv. Pro. No. 13-80072-swd

          Plaintiff,

v.

KAREN S. THRUN and JANICE
WATERWAY, Trustees of THE
BARBARA J. SCHEID TRUST,

          Defendants.
_____/


**<u>BRIEF IN SUPPORT OF TRUSTEES OF THE BARBARA J. SCHEID TRUST'S
MOTION TO DISMISS COMPLAINT</u>**

## STATEMENT OF ISSUES PRESENTED

1.      Is the debtor's interest in the Barbara Scheid Trust part of the bankruptcy estate, when the trustees had discretion to withhold his distribution, and thus he had no "right" to a distribution when the bankruptcy petition was filed?

**Defendants Answer:  No.**

2.      Is the debtor's interest in the Barbara Scheid Trust part of the bankruptcy estate, where 11 U.S.C. §541(c)(2) excludes a debtor's interest in a spendthrift trust from the bankruptcy estate, and the Barbara Scheid Trust contained a valid and enforceable spendthrift provision when the bankruptcy petition was filed?

**Defendants Answer:  No.**

3.      Does this Court have subject matter jurisdiction over the relief sought in Counts II through IV of the Complaint where these claims directly relate to administration of the Barbara Scheid Trust and thus fall squarely within the probate court's exclusive jurisdiction?

**Defendants Answer:  No.**

## INTRODUCTION

With Count I of the Complaint, the bankruptcy trustee seeks an order compelling the trustees of a trust to turn over the debtor's interest.  However, the bankruptcy estate is determined as of the date the bankruptcy petition *is filed*.  At filing, the trustees of the trust had the discretion to withhold distributions under the trust agreement's clear terms, the trust's spendthrift clause remained valid and enforceable, and the scope of expenses and claims that needed to be paid first were not yet known.  Because the bankruptcy trustee steps into the debtor's shoes, and the debtor himself was not entitled to a mandatory distribution when the bankruptcy petition was filed, the debtor's interest in the trust is not part of the bankruptcy estate under the Bankruptcy Act, Michigan trust law, and the trust agreement's terms.  The material facts related to this determination are undisputed, and thus adjudicating Count I now is appropriate.

As to Counts II through IV, the bankruptcy trustee lacks standing and this Court lacks subject matter jurisdiction because the relief sought falls within the "probate exception" and the Probate Court's exclusive jurisdiction over trust administration and distribution.

## UNDISPUTED FACTS

### I.    Creation of the Trust

During her lifetime, Barbara Scheid (the "**Settlor**") created the Barbara J. Scheid Trust, dated January 10, 2001 (the "**Trust**").  The Trust was revocable during the Settlor's lifetime.  (**Ex. A**, Trust Agmt at ¶ 2.1.)  The beneficiaries of the Trust at the Settlor's death are her children, which includes the debtor Anthony J. Frisch (the "**Debtor**").  The Debtor has learning disabilities.  The Trust contains a spendthrift provision:

> **Spendthrift Provision**.  A beneficiary may not assign any portion of his or her beneficial interest in income or principal.  No creditor

of any beneficiary may attach, interfere, take or reach by any legal or equitable process any part of a beneficiary's interest in satisfaction of any debt or liability of the beneficiary prior to actual receipt by the beneficiary after payment from Trustee. **Trustee may withhold distributions to any beneficiary whose interest would or likely could become payable to anyone other than the beneficiary**.

(**Ex. A**, Trust Agmt. at ¶ 6.6) (emphasis added).

At the Settlor's death, the successor trustees were instructed to first pay all of the Settlor's estate expenses (which includes creditors) and administrative expenses:

> **At Settlor's Death**.  Upon the death of Settlor, ***Trustee shall*** pay ***all charges against Settlor's estate*** as provided in this paragraph[.]
>
> All charges against Settlor's estate, if paid by Trustee, shall be paid as an ***expense of administration***, without apportionment among the beneficiaries[.]  In determining liabilities and charges under this paragraph, Trustee may act upon evidence it deems reliable. Trustee ***shall then*** divide and distribute the trust assets as provided in Article V[.]

(**Ex. A**, Trust Agmt. at ¶ 4.3) (emphasis added).  After payment of these expenses, Article V directs the successor trustees to "divide and distribute the assets that remain" into "shares among Settlor's then living descendants by right of representation."  *Id*. at 5.1, 5.2.  "Each share shall constitute a Separate Trust[.]"  *Id*.  "To facilitate identification, Trustee shall designate each Separate Trust with the name of the beneficiary for whom it is established."  *Id*.

The Trust further gives the successor trustees authority to "use principal for the beneficiary if, in Trustee's discretion" a situation set forth at Section 5.4 arises.  *Id*. at 5.4.  "After the beneficiary attains age 25, the beneficiary has a continuing right to withdraw an amount up to one-half of the value of the trust assets.  After the beneficiary attains age 30, the beneficiary has a continuing right to withdraw all trust assets."  *Id*. at 5.5.  "Each beneficiary's

- 2 -

share shall constitute a Separate Trust to be held, administered, and distributed as provided in this Article[.]" *Id.* at 5.6.

## II.    Amendment to Debtor's Trust Interest

The Settlor loaned the Debtor money, and as a result, later amended her Trust to address this loan.  Specifically, the successor trustees were instructed by the Trust to reduce the Debtor's share by $35,000 as well as the balance owed on the loan with the Settlor.  (**Ex. B**, First Amendment to Trust Agmt., 5.2(c) ("[a]ny indebtedness of Settlor's son, ANTHONY J. FRISCH, evidenced by a promissory noted date dated February 25, 2003 in the original amount of $204,160, shall be distributed to ANTHONY J. FRISCH as part of his otherwise then pro rata share of the trust assets")).  All other relevant aspects of the Trust Agreement were reaffirmed, which includes that expenses be paid before the Separate Trusts for the beneficiaries were to be created.  *See* Ex. B at ¶ 2; Ex. C at ¶ 2.

## III.    After the Settlor's Death

The Settlor died on August 26, 2011.  As a result, the Trust became irrevocable.  (**Ex. A**, Trust Agmt. at ¶ 2.1.)  Since the Settlor's death, her daughter Karen Thrun and professional trustee Janice Waterway have been serving as successor co-trustees (hereafter, "**Trustees**").  (**Ex. C**, Second Amendment to Trust Agmt.)  Because there was no estate opened for the Settlor, the Trust is responsible for paying the estate's creditors under Michigan law.  MCL 700.7605; MCL 700.7506(1)(b).  The Trust's terms also called for payment of estate expenses with Trust assets.  (**Ex. A**, Trust Agmt. at 4.3.)

The Trustees published the notice to creditors for the estate with the Grand Rapids Legal News on September 9, 2011, just 14 days after the Settlor's death.  (**Ex. D**, Aff. of Publication.)  Under Michigan law, estate creditors then had four-months (until January 9, 2012)

to file a claim against the Trust for debt owed by the Settlor.  MCL 700.3801; MCL 700.7612. While the creditor claims period was still open, on December 14, 2011, the Debtor filed for bankruptcy.  The bankruptcy trustee is Marcia R. Meoli ("**Bankruptcy Trustee**").

The Trust assets are as follows: two parcels of real property which each include a residence ("**Carlton Property**" and "**17 Mile Property**"), financial institutions accounts, gas and oil interests, and a time share (with negative value due to annual fees).  (**Ex. E**, Trust Accounting.)  The 17 Mile Property was listed for sale by the Settlor during her lifetime and sold after her death.  Sometime after the Settlor's death, the Settlor's daughter, Amy Blunt, moved into the Carlton Property to look after it and began paying the utilities.  *Id*.  The Carlton Property, a significant asset, was listed for sale in January 2013, sold in February 2013, and closed on March 8, 2013.   Administrative expenses were incurred in connection with selling these properties, and maintaining these properties until they were sold.  Other administrative expenses include funeral-related expenses, the Settlor's medical bills, legal fees, accountant fees, and unfulfilled donations.

The distributions made thus far are referenced in the attached Accounting.  (**Ex. E**, Trust Accounting.)  The only distributions made for Debtor's benefit are two payments totaling $6,205.00 to his divorce attorney (one payment on September 21, 2011, for $500, and another for $5,705.00 on October 4, 2011).  *Id*.   The Bankruptcy Trustee deposed Trustee Karen Thrun in November 2012.

## ARGUMENT

### I.    Debtor's interest in discretionary spendthrift trust is not part of bankruptcy estate.

The determination of whether a debtor's interest is included in the bankruptcy estate is made at the commencement of the case.  11 U.S.C. §541 (a)(1) ("The commencement of

the case . . . creates an estate.  Such estate is comprised of all . . . legal and equitable interests of the debtor in property as of the commencement of the case.").  Under Section 541, a bankruptcy trustee takes only the interest the debtor had "subject to the same restrictions that existed at the time the debtor filed the petition."  *In re Cormier*, 382 B.R. 377, 386-87 (W.D. Mich. 2008) quoting *Demcyzk v. Mutual Life Ins. Co. of N.Y.*, 126 F.3d 823, 831 (6th Cir. 1997).

The Debtor's interest in the Trust is not part of the bankruptcy estate because at the time the petition was filed (1) the Debtor had no "right" to withdraw funds; rather, his interest was subject to the Trustees' discretion (a "discretionary trust"), (2) the creditor claims period was still open and thus the Trustees had legitimate grounds to refuse distribution; and (3) the Trust had a valid and enforceable spendthrift provision which excludes the interest from becoming part of the bankruptcy estate pursuant to the Bankruptcy Act.  11 U.S.C. §541 (a)(1); 11 U.S.C. §541 (c)(2); MCL 700.7505; MCL 700.7502.

A.      ***Discretionary Trust.***  **Because the Trustees had the discretion to withhold the Debtor's interest as of the bankruptcy filing, the Debtor's interest is not part of the bankruptcy estate.**

Under the Trust Agreement's terms, the Trustee has discretion to withhold distributions to any beneficiary if the interest could become payable to someone else:  "***Trustee may withhold distributions*** to any beneficiary whose interest would or *****likely could become payable to anyone other than the beneficiary***."  (**Ex. A**, Trust Agmt. at ¶ 6.6) (emphasis added).  In light of the Debtor's financial troubles and significant learning disabilities, the Trustees had the discretion under this provision to withhold distribution to the Debtor.

The Trustee's discretion means that the Debtor had no ascertainable interest in the Trust or "right" to distribution.  "Our Supreme Court has previously held that a beneficiary of a discretionary trust does 'not have an ascertainable interest in the assets of the trust,' and

consequently, the assets of a discretionary trust cannot be claimed by the beneficiary's creditors." *In re Norbury*, Dkt. No. 306099, 2012 WL 6049623 at *5 (Mich. App. Nov. 29, 2012) quoting *In re Hertsberg Inter Vivos Trust*, 457 Mich. 427-428; 422 N.W.2d 289 (1989). "Whether a trust may properly be characterized as discretionary is dependent on the intent of the settlor." *Id*. Because the Debtor has no right to distribution, the Bankruptcy Trustee cannot access his share:

> The transferee or creditor of the beneficiary of a discretionary trust provision ***does not have a right*** to any amount of trust income or principal that may be distributed only in the exercise of the ***trustee's discretion***, and the property is not subject to the enforcement of a judgment until income or principal, or both, is distributed directly to the trust beneficiary.

MCL 700.7505 (emphasis added). *See also* Reporter's Comments ("a beneficiary of a discretionary trust has no *right* to receive trust property"). Thus, because the Debtor had no "right" to distribution of his interest on the date the bankruptcy petition was filed, his interest in the Trust is not part of the bankruptcy estate.

**B.** *Spendthrift Provision*. **The Trust's valid and enforceable spendthrift provision prevented the Debtor's interest from becoming part of the bankruptcy estate under 11 U.S.C § 541(c)(2).**

Even if this Court determines that the Trustees did not have *discretion* over the Debtor's interest in the Trust, the Trust's *spendthrift* provision prevents the Debtor's interest from becoming part of the bankruptcy estate. The Bankruptcy Act specifically excludes spendthrift trusts from the bankruptcy estate:

> A ***restriction on the transfer*** of a beneficial interest of the debtor in a ***trust*** that is ***enforceable*** under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c)(2) (emphasis added). "When a debtor holds a beneficial interest in a trust that contains a valid spendthrift provision which is enforceable under applicable nonbankruptcy

law, the debtor's interest is excluded from the bankruptcy estate." *Strong v. Page*, 239 B.R. 755, 763 (W.D. Mich. 1999) citing Section 541(c)(2).    The legislative history indicates Section 541(c)(2) was intended to apply to spendthrift trusts. *In re Quinn*, 327 B.R. 818, 821-822 (W.D. Mich. 2005).

It is also well-established that "nonbankruptcy law" as used in Section 541(c)(2) includes state law. *Patterson v. Shumate*, 504 U.S. 753, 759 (1992); *Strong v. Page*, 239 B.R. 755, 763 (1999).    Thus, if the Trust's spendthrift was valid and enforceable under Michigan law as of December 14, 2011, when the Debtor filed for bankruptcy, the Debtor's interest in the Trust did not become part of the bankruptcy estate.

### 1.    Spendthrift provisions are "valid and enforceable" under Michigan law.

"The concept of a spendthrift trust has been long recognized by Michigan courts." *In re Edgar*, 425 Mich. 364, 368-69; 389 N.W. 2d 696 (1986) citing *In re Peck Estates*, 320 Mich. 692, 699; 32 N.W. 2d 14 (1948).    A "spendthrift trust" is a term of a trust that "restrains both voluntary and involuntary transfer of the trust beneficiary's interest."    MCL 700.7502(2). In other words, a spendthrift trust is "created to provide a fund for the maintenance of the beneficiary and at the same time to secure it against his improvidence or incapacity.    In a narrower and more technical sense, a spendthrift trust is one that restrains either the voluntary or involuntary alienation by a beneficiary of his interest in the trust, or which, in other words, bars such interest from seizure in satisfaction of his debts." *In re Edgar*, 425 Mich. at 368-69 quoting *Fornell v. Fornell Equip., Inc.*, 390 Mich. 540, 548; 213 N.W.2d 172 (1973) quoting 54 Am Jur, Trusts, § 148, p. 123.

Michigan has recently reaffirmed that spendthrift clauses are valid and enforceable by passage of the Michigan Trust Code in 2010:  "A spendthrift provision is valid

and enforceable."  MCL 700.7502(1).  The general rule is that an assignee of a beneficiary

cannot reach the beneficiary's interest until it has been distributed directly to the beneficiary:

> Except as provided in sections 7504, 7506, and 7507, the **trust beneficiary's interest in a trust** may not be transferred in violation of a valid **spendthrift provision** and trust property is **not subject to enforcement of a judgment until distributed directly to the trust beneficiary**.

MCL 700.7502(3) (emphasis added).    An assignee can only reach a beneficiary's not-yet-

distributed interest if a "reasonable time" has passed after the "mandatory" "designated

distribution date."  MCL 700.7507.  The Bankruptcy Trustee acknowledges as much.  *See* Dkt.

No. 1, Compl. at ¶ 12.  A trustee has a fiduciary duty to enforce a trust's spendthrift provision.

*See Wilcox v. Gen. Retirement Sys. of the City of Detroit*, 233 F.3d 899, 906 (6th Cir. 2001).

### 2.    Three-factor inquiry for analyzing spendthrift clauses under Section 541(c)(2).

To analyze whether an asset is excluded from the bankruptcy estate under Section

541(c)(2), the Sixth Circuit has created a three-factor inquiry:

> Any inquiry under [Section] 541(c)(2) normally has three parts: First, does the debtor have a beneficial interest in a trust?  Second is there a restriction on the transfer of that interest?  Third, is the restriction enforceable under nonbankruptcy law?

*Wilcox*, 233 F.3d at 904.  As to the first factor, there is no dispute here that the Trust is a trust

and that the Debtor is a beneficiary.  Nor is there any legitimate dispute as to the second factor

that the Trust includes a spendthrift provision, where the Trust contains a paragraph titled

"Spendthrift Provision" that restrains voluntary and involuntary transfers by prohibiting the

beneficiary from assigning his interest and creditors from reaching the Debtor's interest until

"actual receipt by the beneficiary after payment from the Trustee."  (**Ex. A**, Trust Agmt. at ¶

6.6.)  *See also* MCL 700.7502(2); MCL 700.7507.

- 8 -

As to the third factor, the spendthrift clause is enforceable under Michigan law, and thus enforceable under the Bankruptcy Act. 11 U.S.C. § 541(c)(2). The Bankruptcy Trustee apparently disputes that the third part is met; however, there are no material facts in dispute and so this determination is ripe for adjudication. In analyzing the third factor, a spendthrift clause is "valid and enforceable" under Michigan law for a "reasonable time" after the "mandatory" "designated distribution date." MCL 700.7502; MCL 700.7507.

The Bankruptcy Trustee steps into the Debtor's shoes. Thus, any limits on the Debtor's ability to demand distribution applies to the Bankruptcy Trustee:

> [T]he ***basic tenet*** of bankruptcy law that a bankruptcy trustee succeeds only to the title and rights in property that the debtor had at the time [h]e filed the bankruptcy petition . . . ***[f]iling a bankruptcy petition does not expand or change a debtor's interest in an asset***; it merely changes the party who holds that interest. Further, a ***[bankruptcy] trustee takes the property subject to the same restrictions that existed at the commencement of the case***.

*In re Sanders*, 969 F.2d 591, 593 (7th Cir. 1992) (citations omitted) (emphasis added) (debtor's interest in municipal pension plan not part of bankruptcy estate because the debtor could not access his interest at the time the bankruptcy petition was filed). As a result, for the Bankruptcy Trustee to prevail, the Debtor must have been able to demand his Separate Trust as of December 14, 2011. Said another way, if the bankruptcy petition had never been filed, could the Debtor have gone to Probate Court on December 14, 2011, and demanded distribution of his Trust interest? As explained below, the answer is no.

In *Wilcox*, the Sixth Circuit held that the debtor's interest in assets held by the trustees of a retirement plan containing an anti-assignment clause were not part of his bankruptcy estate because at the time he filed for bankruptcy, the conditions had not yet been met for him to withdraw these assets. 233 F.3d at 906. There, the Chapter 7 trustee brought an adversarial

- 9 -

proceeding against the retirement system to compel turnover of the debtor's beneficial interest in the plan. *Id*. at 903-904. It was undisputed that the debtor had an interest in the trust, and that the plan contained an anti-assignment provision. *Id*. at 904. The bankruptcy court and district court held that the anti-assignment provision was unenforceable and the debtor's interest in the plan had to be turned over, but these rulings were reversed by the Sixth Circuit. *Id*. The plan's terms permitted the withdrawal of funds from the debtor's account only upon his death, the termination of his employment, his completion of 25 years of service, or his retirement under disability. *Id*. at 903. Even though the debtor had pledged his interest as collateral for a loan before filing for bankruptcy, because the conditions for withdrawing the funds had not been met, the Sixth Circuit held the debtor's interest was not part of the bankruptcy estate under Section 541(c)(2). *Id*. The Sixth Circuit also stated that the anti-alienation provision was "enforceable by the retirement system itself, which controls the disbursement of funds" and thus when "the retirement system chooses not to honor a request to disburse funds in violation of applicable law, it is enforcing the law." *Id*. at 906. Finally, the Sixth Circuit held that the retirement system had a "fiduciary duty to enforce the anti-assignment provision of the plan." *Id*.

In a case with contrasting facts, *Strong*, the Western District of Michigan held the debtor's interest in a trust was part of the bankruptcy estate because when the bankruptcy petition was filed, the debtor had immediate access to the funds in his already-divided-out share and the debtor was the trustee of the trust. 239 B.R. at 785. In *Strong*, the debtor's mother, Alfreda, established a trust for the benefit of the debtor and his two minor children. *Id*. at 760. The trust contained a spendthrift provision. *Id*. at 760. Alfreda died in September 1994, and after her death, the trust corpus was to be divided as "soon as practicable" into three separate shares. *Id*. The debtor became the successor trustee as of Alfreda's death. *Id*. In April or May

1995 (over seven months after Alfreda's death), the "[d]ebtor divided the corpus of the Trust into the requisite three shares and he received fifty percent of the Trust funds." *Id*. at 761. About three and half years after his Alfreda's death, in 1998, the debtor filed for bankruptcy. At the time he had filed for bankruptcy, he had not only divided out his interest but, according to the opinion, was "entitled to take the entire principal on the bankruptcy filing date in 1998." *Id*. at 765. Because the debtor's interest had been divided out and he had access to his entire share years before the bankruptcy petition was filed, the court held that the trust's spendthrift provision was extinguished and unenforceable as of the commencement of the bankruptcy case. *Id*. *See also In re Benton*, 237 B.R. 353, 358 (E.D. Mich. 1999) (debtor's interest in retirement and deferred compensation plans deemed asset of the estate because at the time the bankruptcy petition was filed she had "substantial ongoing control over her retirement plan, through her contributions election rights, her termination distribution rights, and her right to withdraw through loans").

       *Wilcox* and *Strong* stand for the proposition that if the conditions for a mandatory distribution have not yet been met at the time the bankruptcy petition is filed, the debtor's interest in the trust will not become part of the bankruptcy estate under Section 541(c)(2). This rule makes sense, because if the debtor himself could not have demanded distribution at the time of the bankruptcy petition filing, then the bankruptcy trustee cannot be given greater rights than the debtor.

       Here, like in *Wilcox*, the conditions were *not* met for the Debtor to have a right to mandatory distribution as of the bankruptcy petition's December 14, 2011, filing. Under the Trust Agreement, the mandatory designated distribution was after the Debtor turned 30 years old **_and_** expenses were paid. (**Ex. A**, Trust Agmt. at 4.3: After paying expenses, "Trustee **_shall then_**

- 11 -

divide and distribute the trust assets;" and at 5.1, 5.2: "Trustee shall divide and distribute the assets that **_remain_** . . . into shares [and] each share shall constitute a Separate Trust") (emphasis added).  The Debtor's interest was then to be reduced by $35,000 plus the balanced owed on the promissory note with Settlor.  (**Ex. B**, Am. to Trust Agmt. at 5.2.)

The Bankruptcy Trustee is asking this Court to ignore Paragraph 4.3's requirement that expenses be paid first as a condition for the Debtor to access his interest by arguing that because Debtor was over 30 years old at the time the bankruptcy petition was filed, he was entitled to a mandatory distribution.  Dkt. No. 1, Compl. at ¶ 9.  To ignore Paragraph 4.3's instruction that expenses be paid first is tantamount to impermissibly rewriting the Trust.  "A *court may not construe* a clear and unambiguous will [or trust] in such a way as to *rewrite* it." *In re Allen Estate*, 150 Mich. App. 413, 417; 388 NW2d 705 (1986) (emphasis added).  "In determining the intent of the settlor, it is necessary that this Court first look to the expression of the intent in the instrument in question and construe the instrument so that *each word contained therein has meaning*, if it is possible so to do." *Detroit Bank & Trust Co. v. Grout*, 95 Mich. App. 253, 268-269; 289 N.W.2d 898 (1980) (emphasis added).  The Court should look "to the trust instrument *as a whole* in order to determine the settlor's intent." *Donovan v. Nat'l Bank of Detroit*, 20 Mich. App. 485, 488; 174 N.W.2d 146 (1969) (emphasis added).

Until all expenses were paid (or at the very least *ascertainable*), the Trust's mandatory distribution date was not triggered.  Because administration was in its infancy and the four-month creditor claims period was still open as of December 14, 2011, the extent of expenses were not yet known.  Thus, like in *Wilcox*, the Debtor's interest in the Trust did not become part of the bankruptcy estate.  *See also Patterson v. Shumate*, 504 U.S. 753 (1992) (holding debtor's interest in ERISA trust plan was exempt from bankruptcy estate because trust plan contained an

- 12 -

anti-alienation clause).  And the spendthrift clause remains enforceable until a "reasonable time" *after* the mandatory distribution date.  MCL 700.7507(1) ("Whether or not a trust contains a spendthrift provision, a creditor or assignee of a trust beneficiary may only reach a ***mandatory distribution*** of income or principal . . . if the trustee has not made the distribution to a trust beneficiary within a ***reasonable time after*** the designated distribution date.")  (emphasis added).

In contrast, in *Strong*, the mandatory distribution date had been triggered well before the bankruptcy petition was filed.  There, over *three years* had passed between when the settlor died and when the bankruptcy petition was filed.  Here, the Settlor died *less than four months* before the bankruptcy petition was filed.  This time distinction is crucial because in the first few months after the settlor's death, a successor trustee gathers information and tries to put their arms around the assets and expenses.  Also, the notice to creditors is published which gives creditors four months to submit claims under Michigan law.   MCL 700.3801; MCL 700.7612.

The process of gathering assets and identifying claims needs to be completed for the trustee to determine to what extent there are remaining assets for the beneficiaries and then divide out shares.  In *Strong*, the debtor's share was not divided out until over seven months after the settlor's death, even though the trust's language instructed share division "as soon as practicable,"  because in reality the asset and claims discovery process takes time and must be done from an administrative standpoint before shares can be determined.

In this case, as of the bankruptcy petition filing, the four-month creditor claims period was still open, so all expenses were not known, let alone paid.  *See* MCL 700.3801 and MCL 700.7612 (creditors have four months to file claim after publication).  (**Ex. D**, Aff. of Publication.)  As of December 14, 2011, it was possible that an estate creditor would file a claim before the January 9, 2012, cut-off date that resulted in there being insufficient assets left to

- 13 -

distribute a share to Debtor. Further, there was real property that needed to be sold, which would involve various additional expenses. Thus, as of the bankruptcy petition filing, it was entirely possible that the Debtor would have no share or a small share depending on the not-yet-fully-known creditor claims and still-accruing administrative expenses. This is particularly true because the Debtor's interest had to be reduced by $35,000 plus the amount still owed on the promissory note (which Trustees have calculated as $125,740.85).

In contrast, in *Strong*, the debtor's share had been divided out years before the bankruptcy petition was filed, and the court noted that the debtor had immediate access to the funds. *Strong,* 239 B.R. at 765. Here, the Debtor's share had not been created as of the bankruptcy petition's filing because the creditor claims period remained open and administration was in its infancy, nor did the Debtor have immediate access to the funds. Another important distinguishing fact is that in *Strong*, the debtor was also the trustee, which meant the debtor inherently had more access and control over his trust share. Here, the Debtor has never served as trustee.

Because the conditions had not yet been met to trigger a mandatory distribution of the Debtor's share as of the bankruptcy petition's filing, the Trust's spendthrift provision was valid and enforceable, and the Debtor's interest did not become part of the bankruptcy estate. MCL 700.7507(2); MCL 700.7502(1); 11 U.S.C. § 541(c)(2).

The small distributions made for Debtor's benefit before the bankruptcy petition's filing (about $6,000 total) and distributions to the other beneficiaries do not impact the enforceability of the spendthrift provision as of the bankruptcy petition filing. The Trustees made two payments to the Debtor's divorce attorney, as an exercise of their discretion to make principal distributions in situations involving "extraordinary expenses caused by . . . misfortune"

- 14 -

or when a beneficiary needs "support."  (**Ex. A**, Trust Agmt. at 5.4(a), (c)).  These discretionary distributions for Debtor's benefit were not "required" for the reasons explained above.  A trust qualifies as a spendthrift trust even if the trustee has discretion to make payments of principal to the respective beneficiaries.  *Preminger v. Union Bank & Trust Co., N.A.*, 54 Mich. App. 361, 365-66; 220 N.W.2d 795 (1974).  The fact that the trustee has discretion to distribute the funds despite a spendthrift clause "in no way undermines the fundamental operation of the provision to protect the trust assets from the reach of anyone but the beneficiary."  *In re Eley*, 331 B.R. 353 (S.D. Ohio 2005) (citation omitted). [1]

In summary, because the creditor claims period was still open and Trust administration was in its infancy when the bankruptcy petition was filed, the Debtor's share could not have been calculated and thus the conditions for triggering mandatory distribution per the Trust's terms were not met.  As a result, the Trust's spendthrift provision was valid and enforceable as of December 14, 2011.  Were this Court to determine otherwise, the Bankruptcy Trustee would be granted greater rights than the Debtor himself.  Adjudication is appropriate at this time on Count I for these reasons.  *See Strong*, 239 B.R. at 766-767 (noting early determination of whether the trust interest is part of the bankruptcy estate is proper).

## II.  This Court lacks jurisdiction over the relief requested in the Complaint other than determining whether the Debtor's interest in the Trust is a bankruptcy estate asset.

If this Court properly determines that the Debtor's interest in the Trust is not a bankruptcy asset, the remaining counts should be dismissed because the Bankruptcy Trustee lacks standing regarding Trust administration issues.  But even if this Court determines the

---

[1] By making these early Trust distributions before the full scope of the creditor claims were known, the Trustees risked having insufficient funds to pay expenses and then being personally liable for the deficiency if the early distributions could not be recovered from the beneficiaries.

Debtor's interest in the Trust is a bankruptcy asset, this Court must still grant Defendants' motion under Rule 7012(b)(1) as to Counts II through Count IV because those claims are outside of this Court's jurisdiction under the "probate exception."

Bankruptcy courts are a subset of the federal district courts.  To avoid infringing upon state courts and the administration of wills and trusts, the U.S. Supreme Court has created the "probate exception."  *Markham v. Allen*, 326 U.S. 490, 494 (1946); *Lepard v NBD Bank*, 384 F.3d 232, 237 (6th Cir. 2004).  "It is well settled that federal courts have no probate jurisdiction." *Bedo v. McGuire*, 767 F.2d 305, 306 (6th Cir. 1985) citing *Markham*, 326 U.S. at 494.  "The probate exception is a practical doctrine designed to promote legal certainty and judicial economy by providing a single forum for litigation, and to tap the expertise of probate judges by conferring exclusive jurisdiction on the probate court." *Lepard*, 384 F.3d at 237.

"The standard for determining whether federal jurisdiction may be exercised is whether under state law the dispute would be cognizable only by the probate court." *Id.* quoting *McKibben v. Chubb*, 840 F.2d 1525, 1529 (10th Cir. 1988) (emphasis added).  For example, a breach of fiduciary duty claim against a trustee falls within the probate exception and results in the federal court lacking jurisdiction.  *Lepard*, 384 F.3d at 237 (affirming dismissal of breach of fiduciary duty claim for lack of jurisdiction due to probate exception); *see also Bedo v. McGuire*, 767 F.2d 305, 306-307 (6th Cir. 1985) (holding district court lacked jurisdiction because Ohio probate court had exclusive jurisdiction over action involving breach of fiduciary duty claims brought against the executor of the estate).

The Complaint seeks relief that "would be cognizable *only* by the probate court." *Lepard*, 384 F.3d at 237.  Under Michigan's Estates and Protected Individuals Code, Michigan courts have *exclusive* jurisdiction over proceedings concerning trusts:

- 16 -

The [probate] court has ***exclusive*** legal and equitable ***jurisdiction*** of all of the following: . . .

(b) ***A proceeding that concerns*** the validity, ***internal affairs***, or ***settlement of a <u>trust</u>; the <u>administration</u>, <u>distribution</u>***, modification, reformation, or termination of a trust; or the ***declaration of rights that involve a trust, trustee, or trust beneficiary***, including, <u>but not limited to</u>, proceedings to do all of the following:

(i)      Appoint or remove a trustee.
(ii)     ***Review the <u>fees</u> of a trustee***.
(iii)    ***Require, hear, and settle interim or final <u>accounts</u>***.
(iv)    Ascertain beneficiaries.
(v)     ***Determine a question that arises in the <u>administration or distribution of a trust</u>***, including a question of construction of a will or trust.
(vi)    Instruct a trustee and determine relative to a trustee the existence or nonexistence of an immunity, power, privilege, duty, or right.
(vii)   Release registration of a trust.
(viii)  ***Determine an action or proceeding that involves settlement of an irrevocable trust***.

MCL 700.1302(b) (emphasis added).

Counts II through Count IV unquestionably fall within the probate exception. Count II alleges that the Trustees have charged an unreasonably "large fee for services" which falls squarely within the Probate Court's exclusive jurisdiction as a proceeding to "review the fees of a trustee." Dkt. No. 1, Compl. at Count II & ¶ 15; MCL 700.1302(b)(ii). Count II also goes on to allege breach of fiduciary duties, and the Sixth Circuit has made clear that such claims fall outside the federal court's jurisdiction. *Lepard*, 384 F.3d at 237; *Bedo*, 767 F.2d at 306-307. Count III is also a breach of fiduciary duty claim, and thus like Count II, falls outside this Court's jurisdiction. *Id*.

Finally, Count IV seeks a "detailed inventory and account statement" and a determination that the inventory provided was "insufficient to satisfy the Defendants' fiduciary

- 17 -

burden" and thus fall within the exclusive jurisdiction of the probate court as a claim to "require, hear, and settle interim or final *accounts*" and alleging breach of fiduciary duties. *Id*; MCL 700.1302(b)(iii). And Counts II through Count IV all involve "a question that has [arisen] in administration or *distribution* of a trust" and a "proceeding that involves *settlement* of an irrevocable trust" and thus further confirms that all counts fall within the Probate Court's exclusive jurisdiction. MCL 700.1302(b)(v), (viii) (emphasis added). Finally, the legal support cited in the Bankruptcy Trustee's Complaint is from the Estates and Protected Individuals Code, further highlighting that the requested relief triggers the Probate Court's expertise regarding this probate-specific statute and trust administration.

In summary, this Court's jurisdiction extends only to determining whether the Debtor's interest in the Trust is in a bankruptcy asset. All other requested relief, including forced distribution and accountings, is outside this Court's jurisdiction because it directly involves trust administration. "Claims regarding the administration of a trust fall squarely within the exclusive jurisdiction of the Michigan probate courts." *Lepard*, 384 F.3d at 237.

## CONCLUSION

The Bankruptcy Trustee stands in Debtor's shoes as of December 14, 2011. On that day, the Trustees had the discretion to withhold Debtor's distribution under the Trust's clear terms, the Trust's spendthrift clause remained valid and enforceable, and the scope of expenses that needed to be paid first were not yet known because the creditor claims period remained open and administration was in its infancy. Because Debtor's share could not have been calculated let alone demanded as of the bankruptcy petition's filing, the Debtor's interest did not become part of the bankruptcy estate. Therefore, summary judgment under Rule 7056, which incorporated Federal Rule of Civil Procedure 56, is appropriate on Count I of Plaintiff's Complaint.

Further, this Court must dismiss Counts II through IV under Rule 7012(b)(1) (incorporating Fed. R. Civ. P. 12(b)(1)) because this Court lacks subject matter jurisdiction. Claims regarding interpreting and administering the Trust are adjudicated exclusively in Michigan's probate courts.

WHEREFORE, Defendants respectfully request that this Court grant their motion, dismiss Plaintiff's Complaint in its entirety, and grant them any other relief this Court finds just and equitable.

Dated:  April 24, 2013                      WARNER NORCROSS & JUDD LLP


                                            By: _/s/ Laura E. Morris_____
                                                 Laura E. Morris (P70179)
                                            Attorneys for Karen S. Thrun and Janice
                                            Waterway, as Co-Trustees of the Barbara J.
                                            Scheid Trust

146001.146001 9113287-1

- 19 -